E-FILED
Monday, 13 August, 2018  03:11:29 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | | |
|---|---|---|---|
| MONICA LYNN BARRY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. | 14-3199 |
| | ) | | |
| ILLINOIS DEPARTMENT OF | ) | | |
| CORRECTIONS, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**PLAINTIFF'S MOTION AND MEMORANDUM
OF LAW SEEKING BACK PAY, FRONT PAY,
EMPLOYMENT BENEFITS, INTEREST AND OTHER DAMAGES**

NOW COMES the Plaintiff, Monica Lynn Barry, by and through her attorneys, ED FOX & ASSOCIATES, LTD., and for her Motion and Memorandum of Law seeking back pay, front pay, employment benefits, interest and other damages from the Illinois Department of Corrections ("IDOC" or "Defendant") states as follows:

I.      Introduction

On July 18, 2018, a jury returned a verdict in favor of Plaintiff in the amount of $150,000 for her emotional pain and suffering damages on her claim brought under the Americans with Disabilities Act ("ADA"). The parties agreed that all further damages would be determined by this Court, including back and future wages, benefits, interest and attorney's fees and costs. Plaintiff is now asking this Court to award additional damages totaling $550,156.01 and enter judgment in the amount of $700,156.01. Plaintiff is also asking the Court to award attorney's fees and costs after judgment is entered in this case in an amount to be determined at that time.

II.        Damages under the Americans with Disabilities Act

      A.        Available Damages

The ADA incorporates the remedies available to a plaintiff in a Title VII discrimination action. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 1981a(a)(2). Those remedies include compensatory damages "for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3).

Back pay and other forms of equitable relief are available in an ADA case, *see* 42 U.S.C. § 1981a(a)(2); 42 U.S.C § 2000e-5(g)(1), but the decision of whether to award them is reserved for the trial court. *See Pals v. Schepel Buick & GMC Truck, Inc.,* 220 F.3d 495, 500 (7th Cir. 2000). When making that decision, the trial court "must respect the findings implied by the jury's verdict," *id.,* but is otherwise vested "with broad discretion to fashion a remedy for unlawful discrimination," *E.E.O.C. v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1580 (7th Cir. 1997).

The guiding principle in exercising discretion is that the court "has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (internal quotation marks and citation omitted). "And where a legal injury is of an economic character, [t]he general rule is, that... [t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Id.* at 418-19, 95 S.Ct. 2362 (internal quotation marks and citation omitted).

      B.        Plaintiff's Back Pay and Employment Benefits

Once the jury has found that there has been employment discrimination, there is a presumption that the employee is entitled to back pay. *David v. Caterpillar, Inc.,* 324 F.3d 851, 865 (7th Cir. 2003). The purpose of back pay is to put the plaintiff in the same position she would have

been if the discrimination had not occurred. *Harper v. Godfrey, Co.,* 45 F.3d 143, 149 (7th Cir. 1995). The plaintiff must establish the amount of damages, but she is presumptively entitled to full relief. *Hutchison v. Amateur Electronic Supply, Inc.,* 42 F.3d 1037, 1044 (7th Cir. 1994). Back pay extends from the date of the adverse employment action until the date of judgment. *See Ortega v. Chi. Bd. of Ed.,* 280 F. Supp. 3d 1072, 1099 (N.D. Ill. 2017) (citing *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1369 (7th Cir. 1992)).

Back pay represents the wages the plaintiff would have earned had she not been fired. *See* 7th Cir. Pattern Civil Jury Instruction 3.11 (2015). Included in this calculation are any benefits she would have received from the defendant if she had not forcefully resigned her position. *Id.* "Liability for back pay begins at the time that the adverse employment action causes economic injury and continues through the date judgment is entered in the plaintiff's favor." *Ortega,* 280 F. Supp. at 1080-81 (internal quotation marks and brackets omitted).

Plaintiff's monthly rate of pay was $5,276 (or $63,312 annually) at the time of her forced resignation from her employment on July 17, 2015, as indicated on IDOC and State Employees' Retirement System ("SRS") records attached hereto as Exhibit A. Plaintiff went on unpaid leave due to Defendant not accommodating her disability in July 21, 2013 (*see* Ex. A) and the jury verdict in this case was entered on July 18, 2018 (D.E. #71).

Plaintiff's correctional officer salary would have increased over the five years in-between Plaintiff's resignation and the jury verdict in this case. Based on the Illinois Administrative Code[1] and collective bargaining agreement ("CBA") between the Illinois Department of Corrections and Plaintiff's union, AFSCME, and Plaintiff's past raises from 2009 through 2013 which averaged

---

[1] Title 80, Section 310.80(a)(1) of the Illinois Administrative Code titled Pay Plan, Increases in Pay, Satisfactory Performance Increase, indicates that "Each employee who has not attained Step 8 of the relevant pay grade, and whose level of performance has been at a satisfactory level of competence, shall be successively advanced in pay to the next higher step in the pay grade after one year of creditable service in the same class."

$129.50 per month ($1,554 annually), Plaintiff calculates that her base salary would have increased to $64,866 in 2014, $66,420 in 2015, $67,974 in 2016, $69,528 in 2017 and $71,082 in 2018. This calculation on the presumption that Plaintiff would have received an average raise of $1554 per year from 2014 to 2018 in her position as a correctional officer consistent with past raises and the provisions in the Administrative Code and CBA allowing for, and providing, raises.

Generally, "a discharged employee must mitigate damages by using reasonable diligence in finding other suitable employment." *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1202 (7th Cir. 1989) (internal quotation marks and emphasis omitted). Thus, back pay awards must be reduced by "[i]nterim earnings and amounts earnable [by the employee] with reasonable diligence." 42 U.S.C. § 2000e-5(g)(1).

Plaintiff did everything she could to mitigate her damages in this case. She testified that she conducted a thorough job search from her forced resignation in 2015 to present, as documented over two hundred (200) pages of records produced in Plaintiff's Trial Exhibit 16. Despite Plaintiff's job search, she was unable to find a position. Plaintiff did however receive benefits from the SRS under a temporary disability program from September 1, 2013 through October 31, 2017. The SRS program paid Plaintiff 50% of her wages, or $2,638 per month. See Ex. B, Letter from SERS. To be clear, Plaintiff testified that if she had obtained a position she would have worked and left the SRS temporary disability program.

Plaintiff also testified at trial that she also went back to school and obtained her college degree after she was unable to obtain a job. The Seventh Circuit in a similar situation upheld a district court's order concluding that a plaintiff was entitled to back pay while attending school. *Hanna v. Am. Motors Corp.*, 724 F.2d 1300 (7th Cir. 1984); see also *Dailey v. Societe Generale*, 108 F.3d 451, 457 (2d Cir. 1997) ("We believe that a fact-finder may, under certain circumstances,

conclude that 'one who chooses to attend school only when diligent efforts to find work prove fruitless,' satisfies his or her duty to mitigate." (citations omitted)); *Miller v. AT&T Corp.*, 250 F.3d 820, 839 (4th Cir. 2001) ("[T]he central question a court must consider when deciding whether a student-claimant has mitigated [his] damages is whether an individual's furtherance of [his] education is inconsistent with [his] responsibility to use reasonable diligence in finding other suitable employment." (citation omitted)).

Based on Plaintiff's efforts, Plaintiff should be awarded the full amount of her back wages. As shown below, Plaintiff is entitled to $213,294.00 in backpay for the period in-between July 21, 2013 through August 31, 2018[2]. Plaintiff's calculations are based on formulating her salary for each relevant time frame and subtracting Plaintiff's SRS benefit from that amount during the time she received that benefit.

| Dates | Salary | Number of Months | Total amount of lost wages | Amount received from CMS ($2,638 per month) | Total Amount lost after mitigation |
|---|---|---|---|---|---|
| July 21, 2013 - September 1, 2013 | $63,312 ($5,276 per month) | 1.5 | $7,914 | $0 | $7,914 |
| September 1, 2013 - December 31, 2013 | $63,312 ($5,276 per month) | 4 | $21,104 | $10,552 | $10,552 |
| 2014 | $64,866 ($5405.50 per month) | 12 | $64,866 | $31,656 | $33,210 |
| 2015 | $66,420 ($5,535 per month) | 12 | $66,420 | $31,656 | $34,764 |

---

[2] While Judgment has not yet been entered in this case, Plaintiff is presuming Judgment will be entered sometime shortly after briefing on Plaintiff's damages are completed at the end of August 2018.

| 2016 | $67,974 ($5,664.50 per month) | 12 | $67,974 | $31,656 | $36,318 |
| January 1, 2017 - October 31, 2017 | $69,528 ($5794 per month) | 10 | $57,940 | $26,380 | $31,560 |
| November 1, 2017 - December 31, 2017 | $69,528 ($5794 per month) | 2 | $11,588 | $0 | $11,588 |
| January 1, 2018 to August 31, 2018 | $71,082 ($5,923.50 per month) | 8 | $47,388 | $0 | $47,388 |
| **TOTAL** | | | | | $213,294.00 |

C.    Plaintiff's Front Pay

Plaintiff is also seeking front pay damages, in lieu of reinstatement to the IDOC as a correctional officer. "Generally, front pay is awarded as a substitute remedy when reinstatement is inappropriate, such as when 'there [is] no position available or the employer-employee relationship [is] pervaded by hostility.'" *Williams v. Pharmacia, Inc.,* 137 F.3d 944, 952 (7th Cir. 1998). (quoting *McNeil v. Economics Lab., Inc.,* 800 F.2d 111, 118 (7th Cir. 1986)); *see McKnight v. Gen. Motors Corp.,* 908 F.2d 104, 116 (7th Cir. 1990) ("*McNight I*") (if "reinstatement is withheld because of friction that would ensue independently of any hostility or retaliation by the employer, a remedy limited to back pay will not make the plaintiff whole"; in such cases, front pay fills the "remedial gap"). "As an equitable remedy, the district court has discretion to decide whether to award front pay." *Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1201 (7th Cir. 1989).

Plaintiff believes reinstatement in this case is inappropriate for several reasons. First, Defendant has not indicated that there is a position available for Plaintiff or that it would even take Plaintiff back into her position. Plaintiff has not worked in her position since July 2013, and it is unclear that Defendant would be willing to provide the requested accommodations that were the basis for this lawsuit even if she returned. Second, there is some hostility between Plaintiff and Defendant as seen by Defendant's repeated denials of her claim and refusal to work with Plaintiff during the accommodations process, and their act of forcing Plaintiff to resign her employment. Lastly, Plaintiff has already "cashed out" her retirement and thus reinstatement would not completely make her whole or provide her with the same benefits she received through her employment. Thus, Plaintiff believes front pay is the most appropriate remedy in this case.

Front pay is a standard component of make whole relief: it "is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. duPont de Nemours & Co.*, 532 U.S. 843, 846 (2001). "Front pay begins when back pay ends (date of judgment) and continues for whatever period of time will make plaintiff whole. (citation omitted) … While an award of front pay 'must be grounded in available facts, acceptable to a reasonable person and not highly speculative,' the district court nevertheless has 'very considerable discretion…in considering the questions.'" *Ortega*, 2017 WL 5593350 at *19 (*quoting Downes v. Volkswagen of Am., Inc.*, 41 F. 3d 1132,1142 (7th Cir.1994)).

"[T]he front pay award gives the employee the present value of the earnings from her old job less the earnings from her new (or expected) job." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 954 (7th Cir. 1998). The plaintiff bears the initial burden of providing the district court "with the essential data necessary to calculate a reasonably certain front pay award," including "the amount

of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *McKnight,* 973 F.2d at 1372.

Based upon SRS's statement of account for Plaintiff as of June 30, 2017, Plaintiff would not have been eligible for a retirement monthly benefit until December 1, 2025. See Ex. A, SRS Statement of Account dated 06/30/2017. Based upon this estimate, Plaintiff should be awarded four years of front pay wages in this case. Courts in the Seventh Circuit have awarded front pay for lengthy periods of time under similar circumstances, especially when retirement is a factor. *See, e.g.*, *Pierce v. Atchinson, Topeka and Santa Fe Railway Co*., 65 F.3d 562, 574 (7th Cir. 1995) (affirming ten-year front pay award until plaintiff's retirement age of 65); *Washington v. Office of the State Appellate Def.*, 2016 WL 3058377, at *9-10 (N.D. Ill. May 31, 2016) (awarding eight years of front pay, to bring plaintiff to the current Social Security retirement age of 66); *see also Phillips v. City of S. Bend*, No. 3:15CV527-PPS, 2018 WL 2041798, at *10 (N.D. Ind. May 1, 2018) (awarding a police officer who found comparable employment three years of front pay).

Recognizing that front pay awards can be speculative, this case falls in is in the higher range of front pay awards based on several factors: 1) the stability of Plaintiff's position based on her employment for 24 years with the State of Illinois; 2) Plaintiff's stated intent to remain in her position has she not been forced to resign in anticipation of receiving retirement benefits; and 3) the job security Plaintiff would have had due to her union protected status.

Plaintiff will calculate her front pay based on the average of the raises Plaintiff received in-between 2009 and 2013 of $1554 per year, and the Illinois Administrative Code and the CBA. Thus, Plaintiff calculates she would have made a salary of $71,082 in 2018, $72,636 in 2019, $74,190 in 2020, $75,744 in 2021, and $77,298 in 2022. Using a discount rate of 4.5% (the average

of the interest rates between January 1, 2017 and the present), Plaintiff is entitled to a total of $269,706.77 in front pay based on the following:

| Year/Dates | Salary | Front Wages | Present value of Front Wages after applying discount rate[3] |
| --- | --- | --- | --- |
| September 1, 2018-December 31, 2018 (4 months) | $71,082 ($5,923.50 per month) | $23,694 | $22,673.68 |
| 2019 | $72,636 | $72,636 | $69,508.13 |
| 2020 | $74,190 | $74,190 | $67,938.01 |
| 2021 | $75,744 | $75,744 | $66,374.21 |
| January 1, 2022-September 1, 2022 (8 months) | $77,298 ($6441.50 per month) | $51,532 | $43,212.74 |
| **TOTAL** | | | $269,706.77 |

D.      Other Benefits

Plaintiff also seeks equitable relief for several other employment benefits, including health care benefits and taxes she paid on her pension benefits. Regarding health insurance benefits, Plaintiff lost her health insurance after she cashed out her pension in October 2017. She received documentation from CMS in December 2017, attached hereto as Exhibit B, that she was eligible for COBRA benefits at a monthly premium rate of $883.28 per month for health insurance and $36.98 for dental insurance. These amounts total $920.26. From the period in-between December 2017 through August 31, 2018, or 9 months, this amount would total $8,282.34.

---

[3] Present value is calculated by following this formula:  Present Value = Front Wage Amount x (1 + .045 (prime interest rate) raised by the number of years calculated, or PV = FV*(1+i)^-n

When Plaintiff took out her pension, she had to pay taxes on the amount that was returned to her. Plaintiff would not have had to take out her pension if she had been allowed to continue working for the IDOC. Thus, in order to be made whole, Plaintiff should be refunded the taxes she paid on her pension. Based on a letter received from SRS, attached hereto as Exhibit C, Plaintiff paid $9,563.96 in taxes on the money that she took out of her pension at that time. This full amount should be awarded to Plaintiff.

Lastly, Plaintiff had to pay back $510.55 for uniforms and badges when she resigned her employment pursuant to a letter dated July 20, 2015 attached hereto as Exhibit D. Plaintiff would not have had to pay this amount if she had not resigned. Thus, Plaintiff seeks a total of $18,356.85 in other benefits to make her whole.

E.    Tax consequences

Plaintiff further requests that Defendant compensate her for the negative tax consequences associated with receiving a large lump-sum payment of back pay. The Seventh Circuit in *EEOC v. Northern Star Hospitality, Inc.,* 777 F.3d 898, 904 (7th Cir. 2015) held that a district court has authority to issue a tax-component award to Title VII plaintiffs to compensate for the negative consequences of receiving lump-sum awards of back pay, which are taxable as wages in the year received.

Plaintiff calculates that a back-pay award of $213,294 would put her within the 35% tax bracket pursuant to the new tax law that recently went into effect[4]. This means that Plaintiff is awarded $213,294 she would pay taxes $44,298 plus 35% of any amount over $200,000, or $4,652.90 (35% of $13,294), totaling $48,950.90. Plaintiff is not currently working and does not have a current income. In the event she obtains a position, her tax rate would be 10% of her taxable

---

[4] Plaintiff bases her calculations on the tax brackets outlined here: https://www.doughroller.net/taxes/federal-income-tax-brackets-deductions-and-exemption-limits/

income in the event that she makes up to $13,600. Even if Plaintiff obtains a position similar to her position with IDOC that paid her in-between $60,000 and $70,000, should would pay $5,944 plus 22% of excess over $51,800. Thus, any tax liability would be substantially more than taxes she may have to pay in her current situation. Plaintiff therefore asks this Court to award her $40,000 to assist in the tax payments for her back-pay award.

III.    Prejudgment Interest

Prejudgment interest is presumptively available for violations of federal law. *See Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 338 F.3d 736, 745 (7th Cir.2003). The Supreme Court has held that "[p]rejudgment interest is an element of complete compensation." *West Virginia v. United States,* 479 U.S. 305 (1987). That is because "[m]oney today is simply not a full substitute for the same sum that should have been paid some time ago." *Williamson v. Handy Button Mach. Co.,*817 F.2d 1290, 1297 (7th Cir. 1987).

When calculating prejudgment interest, the Seventh Circuit directs courts to use the prime rate. *Fritcher v. Health Care Serv. Corp.,* 301 F.3d 811, 820 (7th Cir. 2002). Prejudgment interest also should be compounded monthly. See *Gracia v. Sigmatron Int'l, Inc.,* 130 F. Supp. 3d 1249, 1263 (N.D. Ill. 2015). The prime rate is currently 5.0%.[5] The prime rate has gone up over the past five years[6] from 3.25% to 5.0%. Plaintiff will use the average of the prime rate over this span for purposes of her calculations - 4.125%.  A 4.125% prime rate compounded monthly for the approximately 60-month period spanning from July 2013 to July 2018[7] totals $8,798.39 in interest.

---

[5]  *See* Selected Interest Rates (Daily), Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/releases/H15/

[6] https://www.jpmorganchase.com/corporate/About-JPMC/historical-prime-rate.htm

[7] Plaintiff assumed that she would have received her annual salary as a lump sum at the end of each year in which it was earned and calculated the interest on each annual salary amount from that date going forward. *See Ortega,*280 F. Supp. 3d at 1098 (employing this methodology).

IV.     Plaintiff's Reasonable Attorney's Fees and Costs

Lastly, pursuant to 29 U.S.C. Section 2617(a)(3), the Court shall allow Plaintiff to recover her reasonable attorneys' fees and other costs paid in this action. Thus, Plaintiff's counsel requests leave to file a Motion for Plaintiff's attorney's fees and costs within fourteen (14) days of the entry of final judgment in this matter. *See* Fed. R. Civ. P. 54.

V.      Conclusion

Plaintiff requests this Court award Plaintiff $550,156.01 in damages for lost wages, benefits, interests and other damages and enter Judgment in the amount of $700,156.01. The amount of $700,156.01 is based on the following categories of damages in the amounts listed for the reasons stated above:

$150,000 - Compensatory damages (determined by the jury)

$213,294 - Back pay damages

$269,706.77 - Front pay damages

$18,356.85 - Benefits damages

$40,000 - Tax liability damages

$8,798.39 - Prejudgment interest

Accordingly, Plaintiff respectfully requests that this Court enter Judgment in the amount of $700,156.01 in favor of Plaintiff and against the Defendant.

Respectfully submitted,

By:/s/Jonathan R. Ksiazek
        Attorney for Plaintiff

ED FOX & ASSOCIATES, LTD.
300 W. Adams, Suite 330
Chicago, IL 60606
(312) 345-8877

# EXHIBIT A



**STATE EMPLOYEES' RETIREMENT SYSTEM**

2101 S. Veterans Parkway, P. O. Box 19255       160 N. LaSalle St, Suite S200
Springfield, IL  62794-9255                                    Chicago, IL  60601
217-785-7444   TDD 217-785-7218                     312-814-5853

**www.srs.illinois.gov**

| Statement of Account as of 6/30/2017 | Active Member |
|---|---|

Member ID:                               63-6423833
Tier                                           Tier 1
Membership Date:                    09/01/1989
Service Credit     11.5833 yrs. (139.00 mos.)
Total Contributions                 $50,825.54
Final Average Compensation     $5,233.07
Monthly Rate of Pay                 $5,276.00
Date of Birth                           12/20/1967
Phone Number                         Not on File
Email                                       Not on File
Gender                                    Female

29-177
MONICA L BARRY
33 PINTO DRIVE
SPRINGFIELD, IL 62702-1553

---

*These benefits assume continuous service at current rate of pay through benefit effective date.*

**Estimated Retirement Benefits**

(217) 785-7366

**Alternative Retirement - Monthly Benefit**     **12/01/2025**     **$2,638.00**
Alternative Retirement
You must be age 55 with 20 years of service credit or age 50 with 25 years
of service credit.

For each month (21 days) of unpaid sick days and/or paid sick and vacation days, your projected
monthly gross is anticipated to increase by $10.99.

**You have currently earned a benefit of $1,012.29 that is payable on 01/01/2028.  This amount
is based on what you have earned in retirement benefits up to the present date.   If you left
state employment on 06/30/2017, this is the amount you can receive in retirement benefits
on 01/01/2028.**

Go to www.srs.illinois.gov/SERS/optservice_sers.htm for information on purchasing optional
service.

**Estimated Disability Benefits**

(217) 785-7314

If you become disabled and meet SERS qualifications for disability benefits you may be eligible
to receive one of the following estimated benefits below:

**Our records indicate you are receiving a disability benefit from SERS as of June 2017.**

While you receive SERS disability benefits, your SERS account will continue to be credited with
service and contributions as if you were working.

---

*All aspects of the administration of the State Employees' Retirement System (SERS), including but not limited to benefit calculation and payment, must
comply with state and federal law (40 ILCS 5/14). No employee of SERS has the authority to bind the System to take action contrary to the law, even in
the event of a misstatement of law. Furthermore, while this statement describes SERS' current understanding of the law, this could change as a result
of court opinions, statutory changes or other matters (e.g. Attorney General's opinions). Accordingly, SERS is required under law to correct any mistake
in benefit amount, even after payments have begun. Use of any information from this statement, form or any other document provided by SERS is for
general information only.*

| **Estimated Death/ Survivor Benefits** (217) 785-7366 | **Non-Occupational Death - Survivor Monthly Benefit** | **$506.15** |
|---|---|---|
| | When death results from non-work related cause, this benefit is payable to your eligible spouse at age 50 (or sooner if you have eligible children). | |
| | **Non-Occupational Death - Family Maximum Monthly Benefit** | **$600.00** |
| | **Occupational Death - Survivor Monthly Benefit** | **$2,638.00** |
| | When death results from work-related duties, this benefit is payable to your eligible survivors. This benefit will be reduced by any Workers' Compensation benefits received. | |
| | *Occupational benefits may have additional amounts payable if you have children under 18 or under 22 if a full time student.* | |
| | **Lump Sum Death Benefit without Eligible Survivors** | **$105,177.05** |
| | **Lump Sum Death Benefit with Eligible Survivors** | **$70,430.49** |

**Retirement Beneficiary Information**
(217) 785-6973

Your death benefits will be paid equally to your primary beneficiaries (those listed as #1).  If any of your #1 beneficiary(s) predecease you, your death benefits will be divided among the #1's still living.  Beneficiaries listed as #2's will only be paid if NO primary beneficiaries survive you.  The same process applies to remaining beneficiaries listed as #3 or greater.

1 - JAMES L BARRY
1 - RITA BARRY

If you would like to change or update your beneficiaries, you may obtain the form by logging into the memberservices.srs.illinois.gov website and clicking on the Member Services tab located on the left side.

Reminder – you may have death benefits through other state-sponsored programs such as State of Illinois life insurance or Deferred Compensation that have separate beneficiary forms.

**Reciprocal Service**
(217) 785-7322

**No reciprocal service**

**Please visit** www.srs.illinois.gov for a complete list of all reciprocal systems.

**Agency Contacts**

**Retirement Coordinator**
Wendy Summers
(217) 735-5581 Ext. 237
wendy.summers@doc.illinois.gov

SERS is keeping members informed of the latest news by notifying them by email or phone.   Your contact information is secure and used for internal use only.  After logging into the memberservices.srs.illinois.gov website, please click on the Demographics tab located on the left side to enter or update your contact phone number and email that will be used for notifications.


**SERS** *srs.illinois.gov*
State Employees' Retirement System

April 4, 2018

Monica Barry
33 Pinto Drive
Springfield, IL 62702

SSN: xxx-xx-4779

To Whom It May Concern:

Please be advised that Monica Barry received our temporary disability benefits from the State Employees' Retirement System (SERS) in the amount of $2, 638.00 per month from 9/1/2013 through 10/31/2017. She took a refund on 12/13/2017, therefore she is no longer a member.

If you have any further questions, please do not hesitate to contact our office for assistance.

Sincerely,

*Mendy Riddle*

Mendy Riddle
Claims Examiner
Disability Section
(217) 785-7295

# LUMP SUM WORKSHEET

Employee Name:  **Barry, Monica**　　　　　　　　SS#　　　　　　　Pay Code
　Effective Date:  7/16/2015　　　　Reason:  Resignation　　　　　29- 177

Information from Employee Timesheet:　　　　　　　　　Bargaining Unit:　　　　rc-06
(attach copy)　　　　　　　　　　　　　　　　　　(if applicable)

| | DAYS Rounded Balance | DAYS To Be Paid |
|---|---|---|
| **VACATION:** | | |
| Must have 6 months Continuous Service | | |
| Round up to the nearest half day | 5 | 5 |
| Example: 3.4 = 3.5,  3.6 = 4,  3.5 = 3.5 | | |
| If vacation days are in excess of 24 months of earned time , plus current year earnings | | |
| documentation MUST be submitted for verification | | |
| | | |
| **SICK** | | |
| Total Sick Days | 0 | |
| Cash Value Sickdays | 0 | 0 |
| Those earned between 1/1/84 and 12/31/97 * | | |
| Other sickdays_(These days cannot be paid) | 0 | |
| These are days earned before 1/1/84 and those | | |
| earned after 1/1/1998. | | |
| | | |
| **PERSONAL BUSINESS:** | 1 | |
| One half the days may be paid ONLY for | 0 | 0 |
| Retirement, Disability or Death. | | |
| | | |
| **COMPENSATORY TIME:**　　Days | 0 | 0 |
| (Convert Hours to Days) | | |
| | | |
| **HOLIDAY TIME:** | | |
| Only RC-6,14,28,62,63, CU-500, VR704 | 0 | 0 |
| RC-29, RC-23 and Prevailing rates are eligible | | |

Monthly Salary at Separation　　$5,276.00　　　　$242.57

　　　　　　　　　　　　　　　　　　TOTAL DAYS　　　　5
　　　　　　　　　　　　Total amount of Lump Sum　　$1,212.87

Signed: _~~Dr. Emma Fisher~~_ 　　　　　　　　　　Date: 7/20/15
　　　　　(Timekeeper)

Reviewed / approved: _____　Title: _____　Date: 07/20/15

　　cc: employee　　　　　　　Attachment (DC 333F)
　　　　personnel
　　　　timekeeping

**\*Note**
The employee is paid in full for all days earned from January 1, 1984 through December 31,1997. The rate for these days is one-half their regular daily rate.   We must enter *one-half the days* in the payroll system because we do not have a one-half daily

DC 984 (Eff. 2/94)
IL 426-18783

ILLINOIS DEPARTMENT OF CORRECTIONS
## Personnel Action Form (Decentralized Actions)

| | |
|---|---|
| **Name:** MONICA BARRY | **SSN:** _ _ _ - _ _ - _ _ _ _ |
| **Position Title:** CORRECTIONAL OFFICER | **Position #:** 09675-29-88-310-12-01 ✓ |
| **Division/Bureau:** CORRECTIONS/ADULT | **Facility:** LOGAN CORRECTIONAL CENTER |
| **Location (County):** LOGAN | **Paycode:** 39-177    **PIN#** 0302 |
| **Bargaining Unit #/MC:** RC006 | **Effective Date:** 7-17-15 ✓ |

**Creditable Service Date changes as a result of the following action:** ☐ No   ☐ Yes, From _____ To _____

Complete appropriate information below.

**Action:**
- ☐ Merit Compensation Review:    (BA_____)    $_____   To  $_____
- ☐ Superior Performance Increase:    $_____   To  $_____
- ☐ Appropriation # Change:   From _____   To _____
- ☐ Full Time/Part Time Change
- ☐ Job Assignment in accordance with AFSCME contract   (BA 100)
- ☐ Leave of Absence (type of leave: _____)   (BA_____)
- ☐ Leave Return/Expired (change creditable service date above): Leave From: _____ To: _____   (BA_____)
- ☒ Separation (reason: HEALTH REASONS _____)   (BA 119 ✓)

**Discipline:**
- ☐ Suspension of 30 Days or Less (Specify Number of Days): _____
- ☐ Suspension Pending Discharge
- ☐ Return from Suspension (change creditable service date above) Suspended From: _____ To: _____

**Remarks:** (Provide information required in the CMS Personnel Transactions Manual, such as number of days on leave, etc. Attach an additional sheet if necessary.)
SEE ATTACHED DOCUMENTATION, INCLUDING EMPLOYEE'S RESIGNATION LETTER

*On LOA Since 7-21-13*

**Note:** Ensure all required documentation is attached prior to mailing to Central Personnel Office.

**Approvals and Signatures**

1. **Employee:** *Signature Attached*    2. **Originating Supervisor:** _____
3. **Chief Administrative Officer:** *Kerr Robersson/CAO*    4. **Chief or Deputy Director:** _____
5. **Director:** *Gladyse Taylor ASA*

**Central Personnel Office staff initials when entered in system:** _____

Distribution: White-Central Personnel File; Canary-Facility; Pink-Payroll    Printed on Recycled Paper    DOC 0044 (Rev. 03/2006)

14-3199   001427



ILLINOIS DEPARTMENT OF CORRECTIONS

**Personnel History Log**

Name: _Barry, Monica_          SSN: _____

| Effective Date | Transaction | Position Title | Old Salary | New Salary | Division/Institution |
|---|---|---|---|---|---|
| 4/12/13 | Non Serv. LOA | | | | |
| 4/13/13 | Return | | | | |
| 4/17/13 | Non Serv - LOA | | | | |
| 4/18/13 | Return | | | | |
| 4/19/13 | Non Serv - LOA | | | | |
| 4/20/13 | Return | | | | |
| 5/2/13 | Non Serv. LOA | | | | |
| 5/3/13 | Return | | | | |
| 5/9/13 | Non Serv LOA | | | | |
| 5/11/13 | Return | | | | |
| 7/21/13 | NON - Serv Corr LOA | | | | |
| 5/11/13 | Return - unfrozen salary  ⑧ | | | 5099 +50 long = 5149 | |
| 7-17-5 | Separation - Health Reasons | | | | |

DONE
8/10/15

12 =24-08
approved
to work 3-11
AH

State of Illinois Department of Corrections

PERSONNEL HISTORY LOG

NAME: Barry, Monica L. _____ SOC. SEC. # __

| EFF. DATE | TRANSACTION | POSITION TITLE | OLD SALARY | NEW SALARY | DIVISION/INSTITUTION |
|---|---|---|---|---|---|
| 5-26-10 | Leave Return | | | | |
| 7-1-10 | General Increase | | 4651 | 4698 | |
| 7-1-10 | Correct Longevity | | | | |
| 9-5-10 | DSLOA-Non service | | | | |
| 9-6-10 | Leave Return | | | | |
| 9-8-10 | DSLOA-Non Service | | | | |
| 9-9-10 | Leave Return | | | | |
| 10-28-10 | DSLOA-Non Service | | | | |
| 10-29-10 | Leave Return | | | | |
| 11-14-10 | DSLOA-Service Connected | | | | |
| 11-15-10 | Leave Return | | | | |
| 12-20-11 | DSLOA-Non Service | | | | |
| 12-21-11 | Leave Return | | | | |
| 2-6-11 | LOA-No Service | | | | |
| 2-19-11 | Leave Return | | | | |
| 2-24-11 | LOA-Non Service | | | | |
| 2-25-11 | LOA Return | | | | |
| 3-10-11 | LOA-Non Serv. | | | | |
| 3-12-11 | LOA Return | | | | |
| 6-1-11 | General Inc. | | 4698 | 4840 | |
| 8-2-11 | LOA-Non Srv. | | | | |
| 8-3-11 | LOA-Return | | | | |
| 2-18-12 | LOA-N.S.C. | | | | |
| 2-29-12 | LOA Return | | | | |
| 3-10-12 | NS LOA | | | | |
| 3-20-12 | LOA Return | | | | |
| 10-29/30-11 | NSLOA & Return | | | | |

DC 5309-A (8/98)

 

State of Illinois Department of Corrections

PERSONNEL HISTORY LOG

NAME: _Barry, Monica L._ SOC. SEC. # _____

| EFF. DATE | TRANSACTION | POSITION TITLE | OLD SALARY | NEW SALARY | DIVISION/INSTITUTION |
|---|---|---|---|---|---|
| 2-3-09 | DSLOA-Non-Service | | | | |
| 2-4-09 | Leave Return | | | | |
| 2-24-09 | DSLOA-Non-Service | | | | |
| 2-26-09 | Leave Return | | | | |
| 3-2-09 | DSLOA-Non-Service | | | | |
| 3-4-09 | Leave Return | | | | |
| 3-30-09 | DSLOA-Non-Service | | | | |
| 3-31-09 | Leave Return | | | | |
| 4-12-09 | DSLOA-Non-Service | | | | |
| 4-14-09 | Leave Return | | | | |
| 6-18-09 | DSLOA-Non-Service | | | | |
| 6-20-09 | Leave Return | | | | |
| 6-26-09 | DSLOA-Non-Service | | | | |
| 6-27-09 | Leave Return | | | | |
| 6-27-09 | Family Responsibility Leave | | | | |
| 6-29-09 | Leave Return | | | | |
| 7-1-09 | General Increase | | 4449 | 4560 | |
| 8-21-09 | DSLOA-Non-Service | | | | |
| 8-22-09 | Leave Return | | | | |
| 11-18-09 | DSLOA-Non-Service | | | | |
| 11-25-09 | Leave Return | | | | |
| 12-16-09 | DSLOA-Non-Service | | | | |
| 12-21-09 | Leave Return | | | | |
| 1-1-2010 | General Increase | | 4560 | 4651 | |
| 1-20-2010 | DSLOA-Non-Service | | | | |
| 1-22-2010 | Leave Return | | | | |
| 5-23-10 | DSLOA-Non-Service | | | | |

DC 5309-A (8/98)

 

State of Illinois Department of Corrections

PERSONNEL HISTORY LOG

NAME: Barry, Monica L.    SOC. SEC. # _____

| EFF. DATE | TRANSACTION | POSITION TITLE | OLD SALARY | NEW SALARY | DIVISION/INSTITUTION |
|---|---|---|---|---|---|
| 4-1-06 | Alternative Empl. | Office Coordinator | | 3130 | Dept. Healthcare + Fami... |
| 4-1-06 | Employee Data Change | | | | |
| 6-27-06 | DSLOA-Non-Service | | | | |
| 9-1-06 | Leave Return | | | | |
| 9-1-06 | Change Tad Line 5 | | | | |
| 9-1-06 | General Increase | | 3130 | 3224 | |
| 12-4-06 | Discharge Reversal | | | | |
| 12-4-06 | LOA General | | | | |
| 8-31-07 | Leave Return | | | | |
| 8-31-07 | Separation/Another | State Position | | | |
| 8-31-07 | Reinstatement | Corr. Officer | | 4255 | Doc/Logan |
| 8-31-07 | DSLOA Non-Service | | | | |
| 8-31-07 | Change Tad Line 5 | | | | |
| 4-7-08 | Leave Return | | | | |
| 5-28-08 | DSLOA-Non Service | | | | |
| 6-2-08 | Leave Return | | | | |
| 6-3-08 | DSLOA-Non Service | | | | |
| 6-20-08 | Leave Return | | | | |
| 8-8-08 | DSLOA-Non Service Reversed due to | | | | |
| ~~8-25-08~~ | ~~Leave Return~~ 3rd level resolution | | | | |
| 9-5-08 | DSLOA-Non-Service | | | | |
| 9-10-08 | Leave Return | | | | |
| 12-21-08 | DSLOA-Non-Service | | | | |
| 12-24-08 | Leave Return | | | | |
| 1-1-09 | General Increase | | | 4449 | |
| 1-26-09 | DSLOA-Non-Service | | | | |
| 1-28-09 | Leave Return | | | | |

DC 5309-A (8/98)

# EXHIBIT B





**Notice Date:  December 12, 2017**
**Qualification Date: October 31, 2017**
**Employer:  State of Illinois**

MONICA BARRY
33 PINTO DR
SPRINGFIELD, IL 62702-1553

*This notice contains important information about your right to contin*
*your healthcare coverage in the plan(s) listed below. Please read th*
*information contained in this notice very carefully.*

**COBRA Continuation Coverage Election Notice**

Dear State of Illinois Group Insurance Participant(s):

The State of Illinois Department of Central Management Services (CMS) has been notified that your State Employees Group Insurance Program (SEGIP) coverage has terminated. You may be eligible to elect temporary continuation of health, dental and vision coverage, at your own expense, under provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) or under Sections 367.2, 367e and 367e.1 of the Illinois Insurance Code. Life insurance continuation coverage is not available through COBRA; however, you may be eligible to convert or port the life coverage in force on the date of termination. Contact Securian/Minnesota Life within 31 days of the date of termination at 888-202-5525 for information.

The enclosed COBRA Continuation Coverage Election Form is for electing COBRA coverage only and must be completed, signed and either uploaded to MyBenefits.illinois.gov or mailed to the MyBenefits Service Center at 134 N LaSalle Street, Suite 2200, Chicago, IL 60602, within 60 days from the date of this letter. You then have an additional 45 days to submit the premium payment through the current month; however, **coverage is not activated until your payment is received**. Once the premium payment has been received, coverage will be reinstated retroactively to the date of the qualifying event. If you change carriers, go out of the provider network, or have services without a required referral before you elect COBRA continuation coverage, these services may not be covered. Failure to submit the Election Form by the due date and premium payment by the final date will result in disqualification for COBRA continuation coverage.

Refer to MyBenefits.illinois.gov for more detailed information regarding the COBRA program. This website provides materials and information regarding your rights and responsibilities, events and periods when you may request changes to your coverage, and events that qualify for an extension of COBRA or result in loss of COBRA eligibility.

This letter is to notify you of your COBRA election rights. If your spouse or partner is listed as a dependent, you are legally obligated to notify him/her of their COBRA rights. If you decide to enroll in COBRA continuation coverage, please photocopy the completed and signed Election Form and retain it for your records.

Please read the information contained in this notice very carefully. To elect COBRA continuation coverage, follow the instructions on the following pages to complete the enclosed Election Form and submit it to the address below. To decline any or all COBRA continuation coverage, complete the enclosed Declination Agreement and submit it to the address below.  If you have any questions concerning any information in this notice or your rights to continue coverage, please contact the MyBenefits Service Center at 844-251-1777 or 844-251-1778 TDD/TTY, Monday - Friday, 8:00 AM - 6:00 PM CT.

MyBenefits Service Center
134 N LaSalle Street, Suite 2200
Chicago, IL 60602

BWID: 106939





If you do not elect COBRA continuation coverage, your coverage under the Plan will end on October 31, 2017 due to your termination.

You and/or any of your dependents who were covered on the day before the event are entitled to continue your healthcare coverage for up to 18 months.  If you elect to continue your coverage under the Plan, your continuation coverage will begin on November 01, 2017 and can last until May 01, 2019.

Monthly premium rates for Continuation Coverage (including 2% administrative fee) are:

| Benefit | Benefit | Options | Monthly Premium |
|---------|---------|---------|-----------------|
| Dental | Quality Care Dental Plan | Employee Only | $36.98 |
| Dental | Quality Care Dental Plan | Employee + 1 | $65.70 |
| Dental | Quality Care Dental Plan | Employee + 2 or more | $113.24 |
| Medical | Health Alliance HMO | Employee Only | $883.28 |
| Medical | Health Alliance HMO | Employee + 1 | $1,627.73 |
| Medical | Health Alliance HMO | Employee + 2 or more | $2,189.28 |

Note: If while employed you were paid more frequently than once a month, and you lost coverage prior to the 16th of the month, you must pay a half month premium for that month.

Please do not send any premium payment with the Election Form (see mailing information below).  **However, continuation coverage is not activated until payment is received.** Important additional information about payment for COBRA continuation coverage is included in the pages following the Election Form.

**If you have any questions about this notice or your rights to COBRA continuation coverage,** please contact the MyBenefits Service Center at 844-251-1777 or 844-251-1778 TDD/TTY, Monday - Friday, 8:00 AM - 6:00 PM CT.

Mailing information is as follows:

<u>**Election form must be mailed to:**</u>

MyBenefits Service Center
134 N LaSalle Street, Suite 2200
Chicago, IL 60602

<u>**Premium Payment must be mailed to:**</u>

CMS COBRA Administration
801 S. 7th St.
PO Box 10264
Springfield, IL 62791

BWID: 106939

# EXHIBIT C



**STATE RETIREMENT SYSTEMS**

- State Employees' Retirement System of Illinois
- General Assembly Retirement System
- Judges' Retirement System of Illinois

Internet: http://www.srs.illinois.gov    E-Mail: sers@srs.illinois.gov

*2101 South Veterans Parkway, P.O. Box 19255, Springfield, IL 62794-9255*

December 8, 2017

MS. MONICA L. BARRY
33 PINTO DRIVE
SPRINGFIELD, IL 62702

SSN:  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

### NOTICE OF REFUND PAYMENT

The refund that you applied for has been approved and the warrant should be issued and mailed from the Office of the Comptroller on December 13, 2017.

The taxable portion of a refund of contributions qualifies as a lump sum distribution under Section 402(e) (4) of the Internal Revenue Code and is eligible for rollover into an Individual Retirement Account or another qualified employer retirement plan that accepts rollover contributions. To be eligible for a rollover tax free into an Individual Retirement Account, the rollover must occur within 60 days of receipt of the distribution from the plan which is qualified under Section 401(a) of the Internal Revenue Code.

A refund is exempt from Illinois state income tax; however, it is subject to federal income tax. You will receive a Form 1099 following the close of the current tax year indicating the total distribution amount, the taxable amount and any amounts withheld. If the address listed above should change before you receive this Form 1099, notify the Office of the Comptroller. Effective January 1, 1989, the taxable portion of the refund of contributions is subject to a 10% excise tax if you withdrew from state employment prior to age 55.

The following information applies to your refund:

| | |
|---|---|
| Total refund before deductions: | $55,659.22 |
| Nontaxable amount: | $7,839.42 |
| Taxable amount: | $47,819.80 |
| Federal tax withheld: | $9,563.96 |
| Net warrant: | $46,095.26 |

Since you have a vested interest in the system, it is our policy to furnish you ...... a pension estimate and advise what you forfeit if you accept the refund. Based on your service, effective January 1, 2028, you have earned a monthly pension of approximately $1240. Currently basic health and life insurance is available at that time. You may cancel your refund request by returning the uncashed warrant to our office with the notation to 'void' the refund and reinstate your creditable service.

If you have any questions concerning this matter, please contact the Refunds Section at 217/785-7164 or the Internal Revenue Service.

Enclosure

R18023   121317

# EXHIBIT D



**Illinois
Department of
Corrections**

**Bruce Rauner**
Governor

**Gladyse C. Taylor**
Acting Director

**Logan Correctional Center.**
1096 1350th Street, P.O. Box 1000
Lincoln, IL  62656

Telephone: (217) 735-5581
TDD: (800) 526-0844

Certified Mail  7005 0390 0006 1517 4763

July 20, 2015

Ms. Monica Barry
33 Pinto Drive
Springfield, IL  62702

Dear Ms. Barry:

  In accordance with IDOC and CMS Personnel's decision regarding your resignation, we have to ask that you return your work I.D, work uniforms, State badges and work coat to Logan Correctional Center. In the event that you do not return these items we will be forced to deduct them from your final paycheck or even deduct them from your IRS tax refund. The following list details what needs to be returned to us as well as the cost of the items if you should not return all items to us:

| | | |
|---|---|---|
| 1-Institutionally issued work coat | $206.00 | ($206.00) |
| 3- Institutionally issued work pants- | $36.00 a piece | ($108.00) |
| 5- Institutionally issued work shirts- | $28.75 a piece | ($143.75) |
| 2-Institutionally issued badges- | $26.40 a piece | ($ 52.80) |

Total:  ($510.55)

Please return these items to us on Friday, August 7, 2015. In the event that you are not able to return the items on this date, please call me and reschedule **NO LATER THAN Monday, August 3, 2015  between the hours of 8:00 a.m. and 4:00 p.m.** If we do not receive these items or a phone call from you, we will proceed with the process of deducting your check and informing the IRS. Also, please be advised there is a state law that prohibits unemployed correctional employees from keeping their state badges. If you do not return the badges it will be considered theft of state property and your name will be entered into a database with the Illinois State Police, in the event of the badges being used improperly your name will be attached to the badges and you will be responsible for any charges. If you have any questions, please feel free to call me at the following number (217) 735-5581 ext. 219

Laurel Mendenhall          Date    7-20-15
Human Resources Representative
Logan Correctional Center

14-3199     001424

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | | |
|---|---|---|---|
| MONICA LYNN BARRY, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | No. | 14-3199 |
| | ) | | |
| ILLINOIS DEPARTMENT OF | ) | | |
| CORRECTIONS, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**NOTICE OF FILING**

To:   Dylan P. Grady
       Assistant Attorney General
       Office of the Illinois Attorney General
       500 South Second Street
       Springfield, IL 62706

       **PLEASE TAKE NOTICE** that on August 13, 2018 the undersigned filed with the Clerk of this Court, **PLAINTIFF'S MOTION AND MEMORANDUM OF LAW SEEKING BACK PAY, FRONT PAY, EMPLOYMENT BENEFITS, INTEREST AND OTHER DAMAGES** service of which is being made upon you.

                                                        s/Jonathan R. Ksiazek
                                                        Jonathan R. Ksiazek
                                                        ED FOX & ASSOCIATES, LTD.
                                                        300 West Adams, Suite 330
                                                        Chicago, IL 60606
                                                        (312) 345-8877

**PROOF OF SERVICE**

       I, Jonathan R. Ksiazek, an attorney, under penalty of perjury, and state that on August 13, 2018, service is being made in accordance with the General Order on Electronic Case Filing section XI.

                                                        s/Jonathan R. Ksiazek
                                                        Jonathan R. Ksiazek