E-FILED
Wednesday, 14 November, 2018 02:54:42 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| MONICA LYNN BARRY,<br><br>    Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS,<br><br>    Defendant. | Case No. 1:14-cv-03199-MMM-TSH |

### ORDER

Now before the Court is the Plaintiff, Monica Lynn Barry's, Motion for Back Pay, Front Pay, Employment Benefits, Interest, and Other Damages ("Motion for Back Pay"). (D. 73).[1] The Defendant, the Illinois Department of Corrections ("IDOC"), filed a Response (D. 74) and the Plaintiff filed a Reply (D. 75). The parties also supplemented their motions with oral arguments before the Court on November 7, 2018. For the reasons set forth below, the Plaintiff's Motion for Back Pay is GRANTED in part, DENIED in part, and found MOOT in part.

### BACKGROUND

The Court and the parties have briefed the background in this case extensively. See, *e.g.* (D. 19 at pp. 1-2); (D. 41 at pp. 1-5). What follows, are portions of the background pertinent to the Motion presently before the Court.

The Plaintiff filed the instant suit in July 2014 (D. 1), later filing an Amended Complaint in December 2014 (D. 13). She alleged violations of the Americans with Disabilities Act of

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

1990 ("ADA"), 42 U.S.C. § 12101 *et. seq.*, and Title VII, 42 U.S.C. § 2000e, *et seq.* (D. 13 at pg. 1). Specifically, the Plaintiff claimed the Defendant's refusal to make a reasonable accommodation for her resulted in her constructive discharge and that the Defendant discriminated against her on the basis of her disability (asthma) and gender.

The Plaintiff worked for the Defendant as a correctional officer at the Logan Correctional Center. In February 2013, she was granted leave under the Family Medical Leave Act (29 U.S.C. § 2601, *et seq.*) due to her asthma, which rendered her partially unable to do her job. Her asthma was exacerbated by irritants such as pepper spray. Although the Plaintiff was never exposed to the spray at work, it was used with some frequency at Logan. The Plaintiff requested a transfer to Lincoln Correctional Center in May 2013. She claimed pepper spray was used less often at Lincoln. The Defendant denied her request.

By July 2013, the Plaintiff submitted statements to the Defendant from physicians supporting her position that avoiding exposure to pepper spray necessitated a medical leave of absence until she could be reassigned accordingly. She based her claim on the Defendant's failure to accommodate her disability. The Defendant gave the Plaintiff a leave of absence on July 21, 2013. The Plaintiff separately asked the Defendant to grant her two reasonable accommodations: (1) permanent assignment away from regular prisoner contact to reduce or eliminate her chances of exposure to pepper spray and (2) to carry a protective mask to be utilized in the event that she was in the vicinity where pepper spray was deployed. The Defendant denied the Plaintiff's requests. While on leave, the Plaintiff declined to participate in a voluntary Alternative Employment Program ("AEP"). The AEP would have assisted her in finding another job. If she had participated in the program and was unable to find employment within two years, she would have been terminated from her position as a correctional officer.

Ultimately, the Plaintiff resigned from her position as a correctional officer, effective July 17, 2015.

In July 2018, the Court presided over the jury trial in this matter. Evidence was presented regarding the Plaintiff's collection of half her salary while on medical leave from the State Employee's Retirement System ("SRS") starting in July 2013. The Court also heard evidence and admitted an exhibit establishing that the Plaintiff applied for over one hundred jobs while on medical leave. After the close of the Plaintiff's case, the Court granted the Defendant's oral Motion for Judgment as a Matter of Law on the Plaintiff's Title VII gender discrimination claim. (See the Court's July 17, 2018 Minute Entry). The jury found in favor of the Plaintiff on her ADA claim and awarded her $150,000 in compensatory damages for mental/emotional pain and suffering. (D. 71).

The Plaintiff filed her Motion for Back Pay shortly after the trial concluded. (D. 73). She initially asserted that she was entitled to damages in excess of $550,000 and a total judgment of more than $700,000, consisting of $213,294.00 in back pay, $269,706.77 in front pay, $18,356.85 in other benefits, $40,000 to assist her in tax payments stemming from her back pay award, and $8,798.39 in prejudgment interest. *Id*. at pp. 2-11. She further requests leave to file a Motion for attorney fees and costs within 14 days of the entry of final judgment in this matter. *Id*. at pg. 12.

The Defendant responds that the front pay, back pay, and other employment benefit amounts should be reduced due to the Plaintiff's failure to mitigate damages. (D. 74). In so doing, the Defendant highlighted the fact that the Plaintiff's employment history includes a significant amount of medical leave absences—124 times—for non-service connected disability, excluding the leave giving rise to the present litigation. *Id*. at pg. 3. The Defendant also insists

3

that additional information is required to determine the Plaintiff's entitlement to a tax-component award. *Id*. at pg. 4.

In her Reply, the Plaintiff maintains that she diligently attempted to mitigate damages and that the Defendant has failed to establish that her efforts were insufficient. (D. 75 at pp. 1-5). She further revised her tax calculations to assist the Court in determining the amount of her tax-component damages, reducing it to $13,286.90. *Id*. at pp. 6-7. Thus, her amended request for damages totals $673,442.91. *Id*. at pg. 7.

### STANDARD OF REVIEW

In ADA cases, back pay and other forms of equitable relief are available to prevailing plaintiffs. 42 U.S.C. § 1981a(a)(2); 42 U.S.C. § 2000e-5(g)(1); *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F. 3d 495, 500 (7th Cir. 2000). In determining a plaintiff's entitlement to back pay and front pay, trial courts "must respect the findings implied by the jury's verdict." *Id*. at 501. District courts otherwise have "broad discretion to fashion a remedy for unlawful discrimination… [in order] to locate a just result in light of the circumstances of the particular case." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F. 3d 1569, 1579 (7th Cir. 1997) (citation omitted).

### ANALYSIS

First, the Plaintiff asserts that she is entitled to $213,294.00 in back pay. (D. 73 at pp. 2-6). Victims of discrimination under the ADA are presumptively entitled to complete relief once a violation has been established, which includes back pay. *Ilona of Hungary,* 108 F. 3d at 1580. (citing *EEOC v. O & G Spring and Wire Forms Specialty Co.*, 38 F. 3d 872, 880 (7th Cir. 1994)). "Back pay represents the wages the plaintiff would have earned had she not been fired." *Ortega v. Chicago Bd. of Educ.*, 280 F. Supp. 3d 1072, 1078 (citing 7th Cir. Pattern Civil Jury

Instruction 3.11 (2015)). This calculation includes any "benefits [s]he would have received from the Defendant if [s]he had not been [terminated]." *Id*. The Defendant's liability for back pay begins on the date of the adverse employment decision which caused the economic injury—in this case July 21, 2013—and ends on the date judgment is entered. *Garcia v. Sigmatron International Inc.*, 130 F. Supp. 3d 1249, 1255 (N.D. Ill. 2015). The Defendant argues that the Plaintiff's award should be reduced due to her failure to mitigate the ensuing economic loss. (D. 74 at pp. 2-3).

It is the Defendant's burden, as the employer, to prove lack of mitigation. *Ilona of Hungary*, 108 F. 3d at 1580; *Sprogis v. United Air Lines Inc.*, 517 F. 2d 387, 392-93 (7th Cir. 1975). This can only be done by proving "*both* that the [Plaintiff was] not reasonably diligent in seeking other employment, *and* that with the exercise of reasonable diligence there was a reasonable chance that [she] might have found comparable employment." *EEOC v. Gurnee Inn Corp.*, 914 F. 2d 815, 818 (7th Cir. 1990) (citations omitted) (emphasis in original). "Under the mitigation doctrine, the employee 'need not go into another line of work, accept a demotion, or take a demeaning position." *Graefenhain v. Pabst Brewing Co.*, 870 F. 2d 1198, 1202 (7th Cir. 1989) (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)).

As the Court acknowledged at the oral arguments, determining the amount of the Plaintiff's award is not a scientific process. The Defendant does not dispute the Plaintiff's underlying calculations. Rather, the Defendant argues the amount of her calculated award should be reduced. (D. 74 at pp. 2-3). The Plaintiff's failure to participate in the AEP and consistent need to take medical leave prior to the present litigation weigh in the Defendant's favor. Had the Plaintiff participated in the AEP, she would not have been any worse off than she was by the time she filed suit. Based on the evidence presented, the Court finds that the Plaintiff

is entitled to back pay, but the amount requested should be reduced by 25%. The Court GRANTS in part the Plaintiff's request for an award of back pay and awards her 75% of her requested amount, $159,970.

The Plaintiff also claims she should be awarded $269,706.77 in front pay. (D. 73 at pp. 6-9). "An award of front pay compensates an unlawfully discharged employee for the loss of earnings that [s]he sustains as a result of the discharge." *Mattenson v. Baxter Healthcare Corp.*, 438 F. 3d 763, 771 (7th Cir. 2006) (citations omitted). It is often limited in duration because it is supposed to be "awarded for 'a reasonable period of time, until a date by which the plaintiff, using reasonable diligence, should have found comparable employment.'" *Stragapede v. City of Evanston*, 125 F. Supp. 3d 818, 832 (N.D. Ill. 2015) (citing, *inter alia*, *Williams v. Pharmacia, Inc.*, 137 F. 3d 944, 954 (7th Cir. 1998)).

The Plaintiff's decision not to participate in the AEP does not factor into this portion of the Court's analysis. The Plaintiff has, however, already had a substantial amount of time to find comparable employment in the wake of her constructive discharge. The Court finds that two more years is a sufficient length of additional time to allow her to find a new job. Her current calculations are based on figures for four years of front pay. (D. 73 at pp. 6-9). Accordingly, that amount is reduced by 50%. The Plaintiff's request for front pay is GRANTED in part and she is awarded $134,853.

Next, the Plaintiff argues the Defendants should pay her $18,356.85 for other benefits. (D. 73 at pp. 9-10). This number is comprised of healthcare benefits and taxes she paid as a result of taking money out of her pension, totaling $8,282.34 and $9,563.96, respectively. *Id.* She also seeks reimbursement for a uniforms and badge fee of $510.55 she had to pay upon her resignation. *Id.* at 10. At the oral arguments for this Motion, the Plaintiff admitted that her

actual economic loss from finding alternative healthcare benefits was nothing. She also withdrew her request for the uniform and badge fee. The Plaintiff's request for uniform and badge fee is MOOT.

The Court DENIES in part and GRANTS in part the remainder of the Plaintiff's request for other benefits. Based on her own admission, she is not entitled to her request for $8,282.34 in healthcare benefits and that request is DENIED. The Plaintiff is, however, entitled to $9,563.96, the penalty she incurred for withdrawing money from her pension fund after the Defendant discriminated against her.

The Plaintiff further asserts that she is entitled to $13,286.90 to compensate her for the negative tax consequences she will incur from receiving a large payment of back pay. (D. 73 at pp. 10-11); (D. 75 at pp. 6-7). After the Court presented its findings on front pay and back pay at oral arguments, the parties submitted agreed upon tax-component calculations. (D. 76-1).

Plaintiffs with established ADA discrimination claims are entitled to a tax-component award to offset the increased tax burden they might incur as a result of receiving a lump sum back pay award. See *EEOC v. Northern Star Hospitality, Inc.*, 777 F. 3d 898, 904 (7th Cir. 2015). Therefore, the Court GRANTS in part the Plaintiff's request for a tax-component award and awards her $7,713.90—the parties' calculated amount.

Lastly, the Plaintiff alleges she is entitled to prejudgment interest on the amount she is awarded, calculated at a rate of 4.125% compounded monthly for a total amount of $8,798.39. (D. 73 at pg. 11). The Defendant did not oppose this calculation. The parties also later agreed upon a calculation of prejudgment interest in light of the Court's award of back pay and front pay at oral arguments. (D. 76-1).

7

The Plaintiff is presumtively entitled to prejudgment interest. *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F. 3d 736, 745 (7th Cir. 2003). The Court finds the parties' calculated amount of prejudgment interest reasonable. Therefore, the Plaintiff's Motion for prejudgment interest is GRANTED in part and she is entitled to $8,798.39, as agreed upon by the parties.

## Conclusion

For the foregoing reasons, the Plaintiff's Motion for Back Pay (D. 73) is GRANTED in part, DENIED in part, and found MOOT in part. The Plaintiff is entitled to $159,970 in back pay, $134,853 in front pay, $9,563.96 and $7,713.90 in other benefits, and $8,798.39 in prejudgment interest. This fully satisfies the Plaintiff's claim for damages.

As for the Plaintiff's request for attorney fees and costs, the Court hereby orders any Motion for Attorney Fees and Costs, with supporting affidavit(s), be submitted to the Court within 14 days of entry of this order. Response to said Motion is due within 7 days.

*It is so ordered.*

Entered on November 14, 2018

    _s/ Michael M. Mihm_
    Michael M. Mihm
    Senior United States District Judge